UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JORDAN MILLER & ASSOCIATES, INC.,

        Plaintiff,

    -v-                                 No.   1:20-cv-5165-LTS-BCM

E.S.I. CASES & ACCESSORIES, INC.,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM ORDER

        Plaintiff Jordan Miller & Associates, Inc. ("Jordan Miller" or "Plaintiff") brings

this action against Defendant E.S.I. Cases & Accessories, Inc. ("E.S.I." or "Defendant")

asserting state law claims for breach of contract, unfair competition and misappropriation, fraud,

promissory estoppel, and unjust enrichment and quantum merit.  (Docket entry no. 27 ("Am.

Compl.").)  Plaintiff's claims arise principally out of Defendant's failure to pay Plaintiff for

certain design, branding, and marketing services performed by Plaintiff in and around 2017.  The

Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

        Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss

Plaintiff's claims for unfair competition and misappropriation (Count II) and fraud (Count III).

The Court has reviewed thoroughly the parties' submissions and, for the following reasons,

Defendant's motion to dismiss is granted in its entirety.

## BACKGROUND

        The following facts are drawn from the allegations set forth in the Amended

Complaint and are taken as true for the purposes of this motion to dismiss.  Between 2009 and

2016, Plaintiff provided design, branding, and marketing services to Defendant on a month-to-

month basis.  (Am. Compl. ¶¶ 6-7.)  In or around January 2017, the parties entered into a one-year agreement whereby Plaintiff would provide such services for six enumerated brands, and Defendant would pay Plaintiff in periodic installments.  (Id. ¶¶ 8-13.)

In or around May or June 2017, Defendant "demanded" that Plaintiff cease work on one of the six agreed-to brands and begin work on a new brand (Am. Compl. ¶¶ 15-16), notwithstanding that "it is well known in the retail industry that the vast majority of design and marketing work for any brand or product occurs in the first half of the calendar year[.]"  (Id. ¶ 19.)  "Ultimately," Plaintiff agreed to Defendant's proposal, subject to an extension of the parties' contract through June 30, 2018, and an increase in the annual budget.  (Id. ¶¶ 23-24.)  In August 2017, however, Defendant paid Plaintiff only a portion of the total to which Plaintiff was entitled under the parties' agreement.  (Id. ¶ 27.)  In September 2017, Defendant did not pay Plaintiff at all, and informed Plaintiff that Defendant "would no longer need [Plaintiff's] services and ceased paying [Plaintiff] altogether."  (Id. ¶¶ 28-29.)

Plaintiff made "various efforts" to recover payment for its work in September 2017, and to "resolve [Defendant's] breaches" of contract, all to "no avail."  (Am. Compl. ¶¶ 34-43.)  On a date unspecified in the Amended Complaint,[1] principals from both parties met in Defendant's office in New York City.  (Id. ¶ 40.)  Defendant allegedly promised to send Plaintiff "more work going forward"; in exchange, Plaintiff "agreed to accept Defendant's discounted payment" for Plaintiff's September 2017 work.  (Id. ¶¶ 39-43.)

---

[1]     In a declaration submitted in connection with this motion practice (docket entry no. 36), Plaintiff's principal proffers that this meeting occurred on or around March 2, 2018.

Defendant neither sent Plaintiff more work nor made the agreed-to discounted payment.  (Am. Compl. ¶¶ 36, 42, 44.)  Plaintiff's principal's calls and emails following up on Defendant's alleged promise to provide more work went unreturned.  (Id. ¶ 43.)

In December 2019, Plaintiff sent Defendant an invoice in the amount of $91,254.36, which included payments allegedly owed for Plaintiff's work in September 2017, at a discounted rate, "as well as work done for other brands outside of the parties' contract."  (Am Compl. ¶¶ 35-36.)  The invoice also stated that unless Defendant paid the invoice, Plaintiff "would retain the rights to all of his work" and that Defendant "was not permitted to use" Plaintiff's work product—a position Plaintiff "also made clear in other," unspecified correspondence with Defendant.  (Id. ¶ 37.)  Defendant "never paid the invoice" (id. ¶ 38), and "continued" to use Plaintiff's "proprietary design and marketing work," allegedly resulting, "[u]pon information and belief," in "up to" millions of dollars being paid to Defendant.  (Id. ¶¶ 44-46.)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Defendant moves to dismiss Count II (unfair competition and misappropriation) and Count III (fraud) of Plaintiff's Amended Complaint.

Defendant first argues that Plaintiff's claim for unfair competition and misappropriation should be dismissed as duplicative of Plaintiff's breach of contract claim. "When a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, . . . are generally precluded, unless based on a duty independent of the contract." Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14-CV-9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (quoting Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 449 F. App'x 57, 59 (2d Cir. 2011)).  Courts have therefore dismissed both misappropriation and unfair competition claims, where those claims are based on alleged conduct proscribed by the parties' agreement, as duplicative of parallel breach of contract claims.  Id. (collecting cases). See also Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018) ("Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim is dismissed as duplicative of the breach claim."); Sell It Soc., LLC v. Strauss, No. 15-CV-970 (PKC), 2018 WL 2357261, at *6 (S.D.N.Y. Mar. 8, 2018) ("Courts in this Circuit routinely dismiss claims for misappropriation of trade secrets that duplicate a breach of contract claim '[b]ecause New York does not permit the same conduct to be assigned as both a breach of contract and a tort.'" (citation omitted)).

Plaintiff's unfair competition and misappropriation claim is premised entirely on Defendant's retention and continued use of the fruits of the parties' agreement—Plaintiff's work product—despite Defendant's failure to pay Plaintiff certain of the amounts owed to Plaintiff

under that agreement.  That conduct is the "same alleged conduct proscribed by contract,"
<u>Bytemark</u>, 342 F. Supp. 3d at 508, and Plaintiff has alleged no independent duty owed by
Defendant to Plaintiff which might give rise to a claim for misappropriation or unfair
competition.  <u>RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.</u>, No. 14-CV-6294 (LTS)
(HBP), 2015 WL 5008762, at *6 (S.D.N.Y. Aug. 24, 2015) ("[A] simple breach of contract is not
to be considered a tort unless a legal duty independent of the contract itself has been violated."
(citation omitted)).[2]  Indeed, if Defendant had paid Plaintiff pursuant to the terms of the parties'
agreement, Plaintiff could not challenge Defendant's use of the marketing, design, and branding
work product Plaintiff contracted to provide, and did provide, to Defendant.  <u>See</u> <u>also</u> <u>Cicel</u>
<u>(Beijing) Sci. & Tech. Co. v. Misonix, Inc.</u>, No. 2:17-CV-1642 (ADS) (SIL), 2017 WL 4535933,
at *6 (E.D.N.Y. Oct. 7, 2017) ("At the heart of the Plaintiff's attempt at establishing an
'alternative theory' is still the question of whether Misonix 'complied with its obligations under
the Agreement.'  If Misonix did comply with its commitments under Section 6, then there is no
liability in that regard.  If it did not comply, then the Plaintiff must seek to hold Misonix liable
under its existing duty under the Agreement.").  The Court therefore dismisses the unfair
competition and misappropriation claim Plaintiff asserts in Count II of the Amended Complaint
as duplicative of Plaintiff's breach of contract claim.

Defendant next argues that Plaintiff's fraud claim should be dismissed for failure
to state a claim.  In New York, "a claim of common law fraudulent misrepresentation has five

---

[2]    Plaintiff's allegation that it informed Defendant in December 2019, more than two years
after the breakdown of the parties' relationship, and at other unspecified times, that "until
and unless ESI paid the invoice, Mr. Miller would retain the rights to all of his work,"
and "that ESI was not permitted to use JMA's work product before ESI paid JMA the
money JMA was owed" (Am. Compl. ¶ 37), does not suffice to plausibly allege the
existence of such an independent duty.

elements: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'"  Travelex Currency Servs., Inc. v. Puente Enter., Inc., 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020) (quoting Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006)).  Fraud must be pled with particularity; to satisfy the particularity requirement of Rule 9(b), the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (citation omitted).

An alleged misrepresentation made in connection with a promise to perform under a contract must be "false at the time that it was made."  Travelex Currency, 449 F. Supp. 3d at 397-98 (citation omitted).  Stated otherwise, "a failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it is made."  Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir. 1987).  Such intent may be "averred generally," Fed. R. Civ. P. 9(b), but must be supported through factual allegations that "give rise to a strong inference of fraudulent intent."  Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995).  "A strong inference of fraudulent intent may be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 466 (S.D.N.Y. 2020) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)).  Mere non-performance of a promise is not sufficient to demonstrate fraudulent intent.  Murray, 811 F.2d at 122; Cerciello v. Admiral Ins. Brokerage Corp., 90 A.D.3d 967, 968 (2d Dep't 2011) ("a cause of action alleging fraud

does not arise merely because a party did not perform contractual duties") (collecting cases). Also insufficient to plausibly allege a defendant's fraudulent intent are conclusory allegations that a defendant knew his or her statement was false at the time it was made.  Prickett v. New York Life Ins. Co., 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012).

The Amended Complaint does not contain factual allegations giving rise to a "strong" inference that Defendant did not intend to provide Plaintiff "more work," in exchange for a discounted payment obligation, at the time of the parties' meeting in March 2018.  Plaintiff argues that it plausibly alleges "strong circumstantial evidence of conscious misbehavior or recklessness" when it alleges that, on unspecified dates after Defendant's promise to send Plaintiff "more work," Plaintiff's "calls and emails would be ignored" by Defendant's representatives.  (Docket entry no. 35 at 10; Am. Compl. ¶ 43.)  This fact is also consistent with Defendant's subsequent inability to (or decision not to) provide Plaintiff with more work, see Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) ("We decline Mills' invitation to infer fraudulent intent from the fact that Polar made a number of contracts to register shares and never performed any of them. A contract may be breached for legitimate business reasons."), especially in light of Plaintiff's other circumstantial allegations that the parties had an eight-year relationship in which Defendant did in fact send Plaintiff work.  (Am. Compl. ¶¶ 6-7; see also id. ¶ 36 (referring to "work done for other brands outside of the parties' contract").)  Moreover, Plaintiff does not allege any contemporaneous facts regarding, for example, Defendant's inability to send Plaintiff "more work" at the time it made a promise to do so.[3]  Without more,

---

[3]     This distinguishes several of the cases relied on by Plaintiff.  See e.g., KCG Americas LLC v. Brazilmed, LLC, No. 15-CV-4600 (AT), 2016 WL 900396, at *4 (S.D.N.Y. Feb. 26, 2016) ("Representations about an entity's ability to perform under a contract are distinct from representations that the entity will perform."); VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 440 (S.D.N.Y. 2001) ("VTech alleges that it

Plaintiff's allegation that Defendant did not respond to certain of Plaintiff's calls and emails after promising to send Plaintiff "more work" is insufficient to allege strong circumstantial evidence of conscious misbehavior or recklessness on the part of Defendant.

   The Amended Complaint also fails to plausibly allege facts showing that Defendant had both the motive and opportunity to commit fraud.  Plaintiff argues that "after Plaintiff made repeated overtures to Defendant regarding the payment it was rightfully owed under an existing contract, [the parties' principals] eventually met in New York," and that this meeting provided both a motive and an opportunity for Defendant to commit fraud by promising to send Plaintiff more work as part of a resolution of the parties' dispute over that payment. (Docket entry no. 35 at 9-10; Am. Compl. ¶ 40.)  However, "[a] generalized profit motive . . . does not create the requisite 'strong inference' of fraudulent intent."  Colpitts v. Blue Diamond Growers, No. 20-CV-2487 (JPC), 2021 WL 981455, at *13 (S.D.N.Y. Mar. 16, 2021) (quoting Negrete v. Citibank, N.A., 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016)); accord Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994) ("To allege a motive sufficient to support the inference that optimistic but erroneous statements were fraudulently made, a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."); MarketShare Corp. v. Transactis, Inc., No. 21-CV-750 (JSR), 2021 WL 1948283, at *4 (S.D.N.Y. May 12, 2021) ("[T]he motive to improve one's financial position by itself does not satisfy the requirement to plead fraudulent intent." (citation omitted)).  Nor, in this case, does a generalized motive to resolve a commercial dispute between the parties regarding outstanding

---

entered into the Agreement on January 19, 2000 only because Lucent misrepresented and concealed a number of contemporaneous facts about the value and condition of the Business and about changes in these facts that had taken place since September 30, 1999.").

payment for services rendered; if it did, alleging the occurrence of any pre-suit settlement negotiations between the parties would satisfy a plaintiff's obligation to allege a defendant's motive and opportunity to commit fraud.  The Court therefore concludes that Plaintiff fails to allege facts showing that Defendant had both the motive and the opportunity to commit fraud giving rise to a strong inference of fraudulent intent.

Having concluded that Plaintiff has failed to plausibly allege Defendant's fraudulent intent in connection with Defendant's promise to send Plaintiff "more work," the Court dismisses the fraud claim Plaintiff asserts in Count III of the Amended Complaint and denies Plaintiff's request for permission to file a Second Amended Complaint including the date of the allegedly fraudulent promise.[4]

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss Counts II and III of Plaintiff's Amended Complaint is granted in its entirety.

The parties are directed to promptly meet and confer regarding a proposed briefing schedule for Defendant's anticipated motion for summary judgment (<u>see</u> docket entry no. 48), and to file a joint letter by September 3, 2021, with a proposed schedule for the Court's consideration.

This Memorandum Order resolves docket entry no. 28.

SO ORDERED.

Dated: New York, New York
        August 20, 2021

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[4]    The Court therefore does not reach Defendant's alternative bases for dismissal of Plaintiff's fraud claim.