UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JORDAN MILLER & ASSOCIATES, INC.,

    Plaintiff,

 -v-                                                                     No.   1:20-cv-5165-LTS-BCM

E.S.I. CASES & ACCESSORIES, INC.,

    Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

Plaintiff Jordan Miller & Associates, Inc. ("JMA" or "Plaintiff") brings this action against Defendant E.S.I. Cases & Accessories, Inc. ("ESI" or "Defendant") asserting state law claims for breach of contract, promissory estoppel, unjust enrichment and quantum meruit, each arising principally out of ESI's non-payment for certain design, branding, and marketing services performed by JMA in and around 2017.  The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

ESI moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment in its favor on each of JMA's claims.  The Court has reviewed thoroughly the parties' submissions and, for the following reasons, ESI's motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.[1]  JMA is engaged in the graphic design business.  (Def. 56.1 St. ¶¶ 1, 5.)  ESI is a "manufacturer, importer and

---

[1]     Facts characterized as undisputed are identified as such in the parties' Local Civil Rule 56.1 statements or drawn from evidence as to which there has been no contrary, non-

wholesaler of various consumer electronics products." (Id. ¶ 3.)  At some point in the late 2000s, JMA began providing design, branding, and marketing services to ESI.  (Id. ¶ 6.)  The parties dispute whether those services were historically performed on a month-to-month or an annual basis.  (Pl. 56.1 St. ¶¶ 7, 41-42.)

For the year 2017, the parties "agreed that ESI would pay [JMA] $450,000 for the year's work, to be paid in periodic installments."  (Def. 56.1 St. ¶ 10; docket entry no. 56-2 ("Azoulay Decl.") ¶ 12.)  According to JMA, a material term of that agreement was the identification of six brands on which JMA would work for ESI.  (Pl. 56.1 St. ¶ 8.)  The parties performed under this agreement for several months in 2017.  (Def. 56.1 St. ¶¶ 10-11.)

In or around May 2017, ESI asked JMA to stop work on one of the original six brands (Kevlar) and to begin work on a new brand (Blaupunkt) in its place.  (Def. 56.1 St. ¶ 12.)  Construing ESI's request as one to renegotiate the parties' agreement, JMA's principal Jordan Miller spoke with Eric Goss (then-Vice President of ESI) and Mark Weinberger (then-Vice President of Sales and Marketing at ESI) regarding an alternative arrangement, whereby JMA would agree to swap the brands as requested and, in exchange, ESI would agree to extend the parties' one-year agreement (after some discussion of a higher budget, at the same budget of $450,000) from July 1, 2017, to June 30, 2018.  (Pl. 56.1 St. ¶¶ 59-63.)[2]  According to Mr.

---

conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements (see docket entry no. 56-3 ("Def. 56.1 St.") and docket entry no. 58 ("Pl. 56.1 St.")) incorporate by reference the parties' citations to underlying evidentiary submissions.

[2]   According to JMA, "[b]rand concepts are finalized early in the year in anticipation of being reused in different formats later in the year," such that much of the branding work for Kevlar would have already been completed by mid-2017, and therefore a mid-year change in brands would and did increase JMA's obligations under the parties' arrangement.  (Pl. 56.1 St. ¶¶ 39-41.)

Miller, the parties reached an oral agreement to that effect in or around late June 2017, and Mr. Miller memorialized that agreement in an email to Goss and Weinberger dated June 27, 2017. (Docket entry no. 59 ("Crain Decl.") Ex. 13 ("I have decided to accept the swapping of Kevlar with Blaupunkt.  I will keep the budget at $450,000 but please keep in mind this is based on a 12 month agreement."); id. Ex. 12 (referring to "a new 12 month agreement starting July 1, 2017 ending June 30, 2018"); Def. 56.1 St. ¶ 14; see also docket entry no. 61 ("Goss Decl.") ¶ 5.) JMA submits that it then began performance under the terms of the revised agreement by working on the Blaupunkt brand, "with [ESI's principal Elliot] Azoulay's full knowledge and acquiescence." (PL. 56.1 St. ¶ 67.)

At the end of August 2017, ESI paid JMA only $25,000 for services performed in the month of August, rather than the approximately $37,500 (i.e., $450,000 divided by twelve) ESI had previously been paying on a monthly basis in 2017.  (Def. 56.1 St. ¶¶ 11, 17.) According to Mr. Azoulay, this was due to "mounting concerns with JMA's work."  (Id. ¶ 18.)[3] At the end of September, ESI "terminated JMA."  (Id. ¶ 15.)

In December 2017, JMA emailed Mr. Azoulay asking for payment for certain services rendered, and enclosing an invoice for $91,254.36 along with an offer to accept that "discounted amount" as "FINAL PAYMENT for all work performed in 2017."  (Def. 56.1 St. ¶ 20; Crain Decl. Exs. 14 & 15.)  That invoice itemized, among other things, a "discounted" payment of $25,000 for work performed in September 2017.  (Crain Decl. Ex. 15.)  On January 31, 2018, Mr. Miller re-sent the December 2017 invoice in the amount of $91,254.36 to Mr.

---

<sup>3</sup> At his deposition, when asked about his motivations for terminating ESI's relationship with JMA, Mr. Azoulay replied only that Mr. Miller "was not completing the work on time and [ESI was] using [its] own designers to do the work."  (Crain Decl. Ex. 2 at 34:16-35:2.)  In his contemporaneous emails, however, Mr. Azoulay complained to Mr. Miller that "all the work" JMA provided "had to be redone."  (Crain Decl. Ex. 14.)

Azoulay, "reflect[ing] a discount for September at $25,000 instead of $37,500," and contemplating a "full payment" including for "all work done outside of our agreement." (Id.)

In or around early March 2018, Mr. Miller met with Mr. Azoulay regarding the "possibility [ ] of a new deal." (Miller Decl. ¶ 38.) During the meeting, Mr. Miller "accepted" an offer of "$25,000 to extinguish all claims then outstanding" "only" on the "express condition that [ESI] assign [JMA] new work of the kind it has assigned [JMA] in the past." (Id. ¶¶ 37-39; see also Crain Decl. Ex. 1 at 94:10-13 ("At that meeting they told me that if I accepted the final payment for September they would – they would give me more work looking forward.").)[4]

On March 7, 2018, Mr. Miller emailed Mr. Azoulay asking, "Can you give me an update on the final payment we agreed to." (Crain Decl. Ex. 17.) Mr. Azuolay replied, "Jordan we need a letter there are no other payments due and the other invoices are voided please," to which Mr. Miller wrote, "Amy [Miller] will send letter. What's the plan moving forward. Do you have any projects for us." (Azoulay Decl. ¶¶ 26-28.)[5] The next day, Ms. Miller emailed Mr. Azoulay, writing "this is final invoice" and reporting that she had "voided the remaining invoices." (Id. ¶ 28.) The invoice apparently accompanying that email was in the amount of $27,500, and contained the description "September 2017 – Payment in Full, This is final payment." (Id. ¶ 29.)

---

[4]   Mr. Azoulay professes to not remember this discussion. (Azoulay Dep. at 43:5-15.) In its summary judgment papers, ESI proffers that "the parties ultimately resolved their differences and agreed upon a final payment," without reference to any promise by ESI to provide JMA with more work. (Def. 56.1 St. ¶ 21.)

[5]   The Azoulay Declaration does not include complete versions of the emails it references; instead, it (like ESI's Local Civil Rule 56.1 statement) includes only cropped portions of the emails and documents it relies on. JMA does not challenge the authenticity or accuracy of those excerpts, however, and for the reasons set forth below, the Court concludes that, even assuming their authenticity and accuracy, they do not entitle ESI to entry of judgment in its favor.

On or about March 13, 2018, ESI issued a check to JMA in the amount of $27,500, with the "Inv Description" as "September 2017 – Final Payment." (Def. 56.1 St. ¶ 34.) While Mr. Azoulay "believed all of the parties' issues to be resolved at that point" (Azoulay Decl. ¶ 37), Mr. Miller continued "follow up on the promise of additional work" to "no avail." (Miller Decl. ¶ 41.)

## Discussion

ESI seeks summary judgment on JMA's first cause of action, for breach of contract, on the principal ground that "no genuine issue of fact exists in this matter as to [ESI's defense of] an accord and satisfaction," as to all of JMA's contractual claims, based on ESI's March 13, 2018, payment to JMA. (Docket entry no. 56-4 ("Def. Mem.") at 1-3.) In the alternative, ESI seeks partial summary judgment on that cause of action, to the extent it seeks damages extending into the year 2018, due to "the non-existence of a contract with a minimum term" extending beyond 2017. (Id.) ESI also seeks summary judgment on JMA's fourth and fifth causes of action, for promissory estoppel and unjust enrichment, on the ground that "the existence of a contract, as in this case," renders those claims "inapplicable." (Id. at 3-4.)[6]

Accord and Satisfaction

"An accord and satisfaction is a form of contract whereby one party agrees to give or perform, and the other party agrees to accept, what is offered in settlement of an outstanding claim." Long Side Ventures, LLC v. Adarna Energy Corp., No. 12-CV-6836-LTS-MHD, 2014 WL 4746026, at *4 (S.D.N.Y. Sept. 24, 2014) (quoting First Sec. Mortg. Co. v. Goldmark

---

[6]  The Court dismissed JMA's second and third causes of action for failure to state a claim by Memorandum Order dated August 20, 2021 (docket entry no. 53).

Plastics Compounds Inc., 862 F. Supp. 918, 934 (E.D.N.Y. 1994)).[7] "Because it is an independent contract, an accord and satisfaction requires a meeting of the minds." Egyptian Canadian Co. v. Scope Imports Inc., No. 18-CV-2713-KHP, 2019 WL 2098149, at *3 (S.D.N.Y. May 14, 2019) (quoting Goldmark Plastics, 862 F. Supp. at 934). As with other forms of contract, an accord and satisfaction must be definite in its essential terms. See Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 587-88 (2d Cir. 1987) ("Although courts are loath to refuse enforcement of agreements on indefiniteness grounds, if the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." (internal citations and quotation marks omitted)). The defendant bears the burden of presenting the accord and satisfaction defense, including all essential elements. Alentino, Ltd. v. Chenson Enterprises, Inc., 938 F.2d 26, 28 (2d Cir. 1991).[8]

---

[7] "[B]oth federal common law and New York law recognize the doctrine of accord and satisfaction, with the same elements." Carrion v. United Airlines, Inc., No. 13-CV-4875-NGG-RER, 2014 WL 3756385, at *3 (E.D.N.Y. July 30, 2014).

[8] ESI did not raise the defense of accord and satisfaction in its Answer (docket entry no. 9). Notwithstanding a defendant's failure to timely plead an affirmative defense, however, the Court may in appropriate circumstances construe a motion for summary judgment raising that defense for the first time "as a motion to amend defendant's answer," and grant that motion "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." Monex Fin. Servs. Ltd. v. Nova Info. Sys., Inc., 657 F. Supp. 2d 447, 457 (S.D.N.Y. 2009) (citations and internal quotation marks omitted). Here, JMA proffers no allegation of such prejudice and has been on notice of the factual basis for this defense since at least the deposition of Mr. Miller on May 20, 2021 (see Crain Decl. Ex. 1 at 94:4-100:6), and the Court's consideration of the defense will not delay proceedings. Accordingly, "this Court considers [ESI's] motion for summary judgment as a motion to amend its answer to state an affirmative defense of accord and satisfaction, and grants it" to that extent. Monex, 657 F. Supp. 2d at 457.

In this case, genuine issues of material fact exist concerning whether the parties had the requisite "meeting of the minds" in March 2018 to form an accord and satisfaction resolving all of their outstanding contractual disputes and entitling ESI to summary judgment. To be sure, it is undisputed that, after months of negotiations concerning amounts owed by ESI to JMA for services performed, Mr. Miller and Mr. Azoulay met in or around early March 2018 in an attempt to resolve those disputes. (Def. 56.1 St. ¶ 21; Pl. 56.1 St ¶¶ 77-81.) While each party believed that such an agreement was reached, however, Mr. Miller understood that the agreement was conditioned on ESI's assignment to JMA of "new work of the kind it had assigned JMA in the past" (id. ¶ 81), while Mr. Azoulay recalls no such condition. (Crain Decl. Ex. 2 at 43:5-15.) This factual dispute as to the existence of a central condition of the parties' attempted accord prohibits entry of summary judgment on ESI's accord and satisfaction defense. Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 372 (2d Cir. 2003) ("an enforceable contract requires mutual assent to the essential terms and conditions thereof" (citation omitted)).[9]

ESI counters that any promise by it in March 2018 to provide JMA "new work" on a going-forward basis was too indefinite to be enforced. (Reply at 4.) Where a term of an agreement is left indefinite, the agreement may not be enforced unless the Court "has means of giving content to the indefinite terms . . . or if those terms are not material to the bargain."

---

[9]   ESI objects to the Court's consideration of the extrinsic evidence submitted by the parties, including the parties' email traffic, on the ground that the "'final release' statement, together with the payment" Defendant made on or about March 13, 2018, "constituted the four corners of the accord agreement." (Docket entry no. 63 ("Reply") at 2-3.) However, ESI also relies on the parties' emails to establish the terms of the purported accord (see Azoulay Decl. ¶¶ 23-37), and the invoice and check themselves (which do not use the word "release")—considered in the absence of the extrinsic evidence proffered by the parties—reflect only a "final payment" for "September 2017" (id. ¶¶ 29, 36), and therefore do not unambiguously contemplate the release of all of JMA's outstanding claims against ESI.

United States v. Bedford Assocs., 657 F.2d 1300, 1310 (2d Cir. 1981).  Accord Brookhaven Hous. Coal. v. Solomon, 583 F.2d 584, 593 (2d Cir. 1978) ("If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result."); Total Telcom Grp. Corp. v. Kendal on Hudson, 68 N.Y.S.3d 491, 493 (2d Dep't 2018) (affirming trial court's determination that a contract whereby the defendant agreed to purchase satellite television equipment from the plaintiff was unenforceable because it lacked "a material term regarding the price or fees to be paid to the plaintiff for Internet-related service"); 17A Am. Jur. 2d Contracts § 39 ("The basic determination that must be made is whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement.").  Here, assuming that ESI's promise to provide JMA "new work" was too indefinite to be enforced as a matter of law, the Court has no means of giving content to the term, or of determining that the term was not material to the parties' bargain—particularly given the undisputed evidence that JMA had twice before sought payment in the "discounted" amount of $25,000 for its work performed in September 2017 alone, but had sought more than $90,000 to resolve all of its outstanding claims as against ESI.  (Crain Decl. Ex. 14 & 15.)  See also Chem. Bank New York Tr. Co. v. Staten Island Bd. of Jewish Ed., Inc., 259 N.Y.S.2d 501, 502 (1st Dep't 1965) (finding "the defendants' contention that there was an accord and satisfaction [ ] not supported by the record," in part because "defendants' allegation of an agreement whereby defendants undertook to pay $100 per month 'more or less regularly' is so vague and indefinite as to be virtually meaningless"), aff'd, 16 N.Y.2d 909  (1965).  Moreover, ESI proffers no legal authority in support of its request that the Court sever the purportedly indefinite "new work" term from the remainder of the parties' March 2018 accord (see Reply at 4 ("This is not to say that the accord – for which separate

consideration existed – is not valid. The accord is most certainly enforceable.")); Marcus v. Lominy, No. 18-CV-1857-NSR, 2022 WL 493688, at *10 (S.D.N.Y. Feb. 17, 2022) ("Where a provision of a contract is unenforceable because of an indefinite term, the whole contract is unenforceable unless the contract is severable."), and the Court finds no basis on which to do so on this record.

Because genuine disputes of material fact exist as to whether the parties reached a meeting of the minds in March 2018 sufficient to create an enforceable accord and satisfaction, the Court denies ESI's motion for summary judgment as to that defense.[10]

Existence of Contract Extending Into 2018

ESI, in the alternative, seeks partial summary judgment on JMA's breach of contract claim, on the ground that "Plaintiff can only show an agreement through December 31, 201[7], not through June of 2018 as alleged," due to the absence of "evidence of mutual assent or acceptance." (Docket entry no. 56-4 ("Def. Mem.") at 3.) However, JMA has proffered admissible evidence of an oral agreement to extend the term of the parties' contract, reached between Mr. Miller and representatives of ESI who had actual or apparent authority to reach such an agreement, and memorialized in email communications sent from Mr. Miller to those representatives. (Pl. 56.1 St. ¶¶ 14-15, 49, 56-67.) JMA has also submitted evidence that it began performance under the terms of the parties' extended agreement, by beginning work on the Blaupunkt brand, with ESI's knowledge and acquiescence. (Id. ¶ 67.) Genuine disputes of material fact as to whether the parties mutually assented to an extension of the 2017 agreement therefore prevent entry of partial summary judgment in favor of ESI on this ground. EMI Music

---

[10]   The Court therefore does not reach JMA's alternative arguments for why ESI has not shown an entitlement to summary judgment as to that defense. (See docket entry no. 57 ("Pl. Opp.") at 16-18.)

Mktg. v. Avatar Recs., Inc., 317 F. Supp. 2d 412, 421 (S.D.N.Y. 2004) (finding "that a genuine issue of material fact exists as to whether there was an oral agreement to extend" the parties' agreement, given factual disputes as to whether the parties had partially performed under the oral extension and whether that performance was "unequivocally referable to the oral modification"); Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots, 636 F. Supp. 384, 389 (S.D.N.Y. 1986) ("Whether or not the oral Sealift Agreement was intended to extend the duration of the Master Agreement as applied to the nine Sealift vessels is in sharp factual dispute between the parties.").

Promissory Estoppel and Unjust Enrichment

Finally, ESI moves for summary judgment on JMA's alternative claims for promissory estoppel and unjust enrichment claim on the theory that they cannot survive alongside Plaintiff's remaining contractual claims. (Def. Mem. at 4 ("Generally, the existence of a contract, as in this case, makes promissory estoppel and unjust enrichment both inapplicable. Were this Court to consider denying Defendant's motion on the grounds that a final settlement had been made, Plaintiff's remaining claim and remedy would be for breach of contract only, rendering these alternative causes of action unsustainable.")).

Where the existence of a contract remains in dispute, a plaintiff may maintain quasi-contractual causes of action in the alternative to his or her contractual claim(s). Mindspirit, LLC v. Evalueserve Ltd., 346 F. Supp. 3d 552, 594 (S.D.N.Y. 2018) ("If at summary judgment the court concludes that the contract at issue is valid and enforceable, then defendants are entitled to summary judgment on the unjust enrichment claim." (citation omitted)); Palatkevich v. Choupak, 152 F. Supp. 3d 201, 222 (S.D.N.Y. 2016) ("If Zaytsev loses on his breach of contract theory, he can proceed with a claim for unjust enrichment as an alternative to his breach of

contract claim[.]"). "A plaintiff may also proceed with a breach of contract claim as well as an independent quasi-contract claim 'where the contract does not cover the dispute in issue' on the plaintiff's quasi-contract theory." Mancuso v. L'Oreal USA, Inc., No. 21-CV-00989-LJL, 2021 WL 1240328, at *4 (S.D.N.Y. Apr. 2, 2021) (collecting cases).

In this case, while ESI has conceded the existence of a contract covering Plaintiff's provision of certain services for the year 2017, factual disputes remain concerning whether that agreement covered all services performed by JMA in that year (for example, JMA's work on the "seventh" brand, Blaupunkt) and whether the parties extended their agreement into the year 2018. In light of these remaining factual disputes, ESI has not shown that it is entitled as a matter of law to summary judgment on JMA's alternative quasi-contractual claims.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (docket entry no. 56) is denied. By **October 26, 2022**, the parties shall meet and confer and file a joint letter informing the Court of their estimate(s) of the time necessary to present the remaining issues in this case at trial, and noting any periods during which the parties are unavailable for trial in the fourth quarter of 2022 and the first half of 2023.

This Memorandum Order resolves docket entry no. 56.

SO ORDERED.

Dated: New York, New York
September 29, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge